3 May 2000

NO. 4-98-0227

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v.      ) Macoupin County

JEFFREY F. STOOPS, ) No. 96CF134

Defendant-Appellant. ) 

                      ) Honorable

) Thomas P. Carmody,

) Judge Presiding.

_______________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

After a bench trial in August 1997, the trial court found defendant, Jeffrey F. Stoops, guilty of two counts of aggravated battery (720 ILCS 5/12-4 (West 1996)).  In September 1997, the trial court sentenced him to 30 months' probation, imposed a $1,000 fine, and ordered him to make restitution of $27,034.65.  Defendant appeals his conviction and sentence, claiming the trial court erred in (1) failing to properly admon

ish him in accordance with Supreme Court Rule 401(a) (134 Ill. 2d R. 401(a)) before allowing him to waive counsel and (2) in exceeding its bounds by becoming an advocate while questioning defense witnesses.  Further, defendant claims he is entitled to credit against his fine for time served waiting trial in the county jail.  We agree with defendant's first contention and reverse and remand.

The State charged defendant with hitting Thomas Griffin in the head with a baseball bat and stomping on his leg and breaking it on July 13, 1996.  The State alleged defendant took these actions while he and Griffin were on a public way and caused great bodily harm to Griffin.

Defendant waived a jury trial and, at a later pretrial conference on February 27, 1997, defendant requested his previ

ously appointed public defender be discharged and he be granted a continuance because he wished to retain private counsel.  The trial court discharged the public defender and granted defen

dant's request for a continuance.

On April 18, defendant again requested a continuance to hire counsel.  He had spoken with an attorney but had not hired him yet because he had not been able to get enough money together due to child support obligations.  The court granted another continuance.  Defendant obtained two more continuances for the purpose of obtaining counsel.  At the pretrial conference on August 15, the trial court advised defendant, who still had not been able to hire counsel, he should get some advice from his former public defender and be prepared for trial as his earnings no longer made him eligible for the appointment of the public defender.

The trial court held a bench trial on August 21.  Defendant proceeded to trial 
pro
 
se
.  The record does not show he waived counsel.

The evidence at trial showed defendant came to a tavern to speak to the bartender, his girlfriend.  Some dispute arose between defendant and two patrons.  Later, in the parking lot, the dispute continued and defendant struck the victim in the head with a baseball bat and stomped on his ankle.  Defendant denied causing the injury to the victim's ankle and testified he struck the victim with the bat only to protect himself from a beating by the two patrons. 

While the evidence was conflicting, the trial court found defendant guilty of both counts of aggravated battery.  The evidence was more than sufficient to support the findings of guilt.

On September 26, the sentencing hearing began.  Defen

dant appeared with appointed counsel.  Griffin testified to the extent of his injuries.  The hearing was suspended so defense counsel could review a transcript of the trial.  A motion for new trial was later filed and denied.  Sentencing resumed on January 28, 1998.  The State argued for an extended-term sentence.  The court expressed concern about the need for restitution and sentenced defendant to 30 months' probation.  The court also ordered him to make restitution to Griffin of $100 per week until $8,737.08 was paid.  Then he was to pay restitution to the State in the amount of $21,600.  The trial court also fined defendant $1,000.  The court ordered the State to "[p]ut all that in the probation order, submit the probation order to [defense counsel] for his review, and then to the [c]ourt for entry."  The court requested defense counsel to contact it within five days to approve the probation order and, at that time, defendant would be brought back to court so the court could explain his appeal rights.

On March 6, the trial court entered an amended written order of probation in which the amount of restitution was stated as $21,670.93.  The court then admonished defendant, pursuant to Supreme Court Rule 605(a) (145 Ill. 2d R. 605(a)), of his right to appeal.  This appeal followed.

Notice of appeal must be filed within 30 days from the entry of final judgment (134 Ill. 2d R. 606(b)) which, in a criminal case, is the pronouncement of the sentence.  
People v. Allen
, 71 Ill. 2d 378, 381, 375 N.E.2d 1283, 1284 (1978).  Because the final judgment is the pronouncement of the sentence, which the State notes was on January 28, 1998, and not entry of a written judgment order (
Allen
, 71 Ill. 2d at 381, 375 N.E.2d at 1284), the State argues defendant's notice of appeal was not timely filed.       

The trial court mistakenly told defendant he had 30 days from the entry of the written order to file his notice of appeal.  Thus, the trial court did not properly admonish defen

dant pursuant to Rule 605(a) that his appeal would be preserved only if the notice of appeal was filed within 30 days from the date of sentence.  145 Ill. 2d R. 605(a).  Where a trial court erred in telling defendant his appeal rights run from the time of the issuance of the written judgment of sentence, and the defen

dant filed his notice of appeal within 30 days of the issuance thereof, it has been held the interests of justice require a finding the defendant's notice of appeal was timely filed.  
People v. Robinson
, 229 Ill. App. 3d 627, 628, 593 N.E.2d 148, 149 (1992).  We have an analogous situation in this case because the trial court erroneously instructed defendant he had 30 days to file his notice of appeal after the entry of the written probation order, and he did so.  In the interest of justice, defendant's notice of appeal will be considered timely filed.

The State next argues defendant has forfeited consider

ation of whether the trial court accepted his waiver of counsel without compliance with Supreme Court Rule 401(a) (134 Ill. 2d R. 401(a)) by failing to include this error in his posttrial motion for a new trial.  
People v. Johnson
, 119 Ill. 2d 119, 131, 518 N.E.2d 100, 105 (1987).  However, this court has considered the issue under the plain error rule, because the right to counsel is fundamental (
People v. Langley
, 226 Ill. App. 3d 742, 749, 589 N.E.2d 824, 829 (1992)), and review is warranted in this case.

Defendant argues the record fails to demonstrate he was admonished according to Supreme Court Rule 401(a), and he never waived his right to counsel.  To accomplish a valid waiver of counsel, Rule 401 requires:

"(a) Waiver of Counsel.  Any waiver of coun-

sel shall be in open court.  The court shall

not permit a waiver of counsel by a person

accused of an offense punishable by imprison-

ment without first, by addressing the defen-

dant personally in open court, informing him 

of and determining that he understands the

following:

(1) the nature of the charge;

(2) the minimum and maximum sentence

   prescribed by law, including, when appli-

   cable, the penalty to which the defendant

   may be subjected because of prior convic-

   tions or consecutive sentences; and

     (3) that he has a right to counsel and, 

   if he is indigent, to have counsel appointed

   for him by the court.

(b) Transcript.  The proceedings required by

this rule to be in open court shall be taken

verbatim, and upon order of the trial court

transcribed, filed[,] and made a part of the com-

mon[-]law record."  134 Ill. 2d R. 401.   

Here, no verbatim record was made, as required by Rule 401(b), to show defendant was given the admonishments required by Rule 401(a).  No court reporter was present at the August pre

trial conference nor does the record or argument by the State indicate 
any
 of the Rule 401(a) admonishments were given to defendant.  He proceeded 
pro
 
se
 at his bench trial on August 21.

The right to counsel is fundamental and will not be lightly deemed waived.  
People v. Robertson
, 181 Ill. App. 3d 760, 763, 537 N.E.2d 1036, 1039 (1989).  Rule 401(a) governs a trial court's acceptance of a defendant's counsel waiver.  Strict compliance with Rule 401(a) is not always required.  Substantial compliance will suffice if the waiver was knowingly and volun

tarily made and the admonishment the defendant received did not prejudice his rights.  
People v. Haynes
, 174 Ill. 2d 204, 236, 673 N.E.2d 318, 333 (1996).  Whatever admonishments are given to a defendant, however, must be included in the record since Rule 401(b) requires that when a defendant waives the right to coun

sel, the proceedings must be recorded verbatim and strict compli

ance with Rule 401(b) is required.  
People v. Montgomery
, 298 Ill. App. 3d 1096, 1099, 700 N.E.2d 1085, 1088 (1998).

The record does not show defendant wanted to proceed 
pro
 
se
.  He indicated he wanted to obtain private counsel and the public defender was discharged.  Later, after he obtained multi

ple continuances, when he found he could not afford to retain private counsel, the trial court informed defendant he made too much money to have counsel appointed for him.  The trial court told defendant to "consult" with the public defender for advice but he might have to proceed on his own.  Correspondence in the record indicates defendant thought he obtained a plea bargain with the State and would have the plea entered prior to trial and would not need counsel.  Instead, no plea agreement was entered and the case went to trial with defendant having no choice but to represent himself.

The trial court was required to consider competing interests.  Defendant was entitled to the effective assistance of counsel in presenting his defense and ordinarily would be enti

tled to counsel of his choice.  
People v. Myles
, 86 Ill. 2d 260, 268, 427 N.E.2d 59, 62 (1981); 
People v. Johnson
, 75 Ill. 2d 180, 185, 387 N.E.2d 688, 690 (1979).  
However, "the right to counsel of a defendant's own choosing may not be employed as a weapon to indefinitely thwart the administration of justice."  
Myles
, 86 Ill. 2d at 268, 427 N.E.2d at 62-63.  A defendant cannot use his right to counsel to thwart the timely administration of justice by insisting on appointed counsel of his choice.  
People v. West
, 137 Ill. 2d 558, 588, 560 N.E.2d 594, 608 (1990).

This case differs from the situation where a defendant seeks to represent himself and the question is whether he know

ingly and voluntarily gave up his right to representation in favor of his right to represent himself.  Defendant made no request to represent himself.  We need not reevaluate whether a defendant can be found to have waived counsel--even if he does not ask to represent himself--if the proper admonishments re

quired in Rule 401(a) are given, because in this case 
no
 
admon

ishments
 were given.  
People v. Childs
, 278 Ill. App. 3d 65, 74, 662 N.E.2d 161, 166-67 (1996).
  To proceed to trial without counsel, whether or not it was at the request of defendant, the trial court 
must
 give the admonishments required by Rule 401(a).  
Childs
, 278 Ill. App. 3d at 74, 662 N.E.2d at 166-67
.

The State argues the record indicates defendant was aware of the information required to be conveyed to him by Rule 401(a).  The admonishments necessary under Rule 401(a) must be provided when the court learns the defendant has chosen to waive counsel so the defendant can consider the ramifications of his decision.  Prior admonitions or the request to discharge counsel do not serve to fully inform a defendant of the ramifications of acting on his own behalf.  He cannot be expected to rely on admonishments given several months earlier, at a point when he was not requesting to waive counsel.  
Langley
, 226 Ill. App. 3d at 749-50, 589 N.E.2d at 830.  Defendant was forced to proceed to trial after failing to obtain counsel following several months of continuances.  The record does not show a valid waiver of coun

sel, and defendant is entitled to a new trial.  

In the circumstances present here, the trial court should have given the proper admonishments and inquired whether defendant was willing to waive counsel.  If the defendant still wanted counsel, but had not obtained his own after the trial court had permitted time to do so, then counsel could have been appointed.  The court could have later conducted a hearing pursuant to section 113-31 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-3.1 (West 1996)) for payment for appointed counsel.  

Defendant also contends the trial court overstepped its bounds while attempting to assist him at trial, and he is enti

tled to credit against his fine for the time served in pretrial detention.  Because we have concluded defendant is entitled to a new trial, we need not address these issues but note the statu

tory right to 
per
 
diem
 credit is mandatory unless the statute under which the fine is imposed prohibits such crediting. 

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.

GARMAN, J., concurs.

STEIGMANN, J., specially concurs.

JUSTICE STEIGMANN, specially concurring:

I agree with the majority opinion, but write sepa­rately to emphasize that the primary error the trial court commit­ted in this case was its apparent belief that defen­dant had only two choic­es:  hire a lawyer or repre­sent him­self.  Reversible error will almost always occur when a trial court forces a defendant (whom the court has found to be nonindigent and who has asked to be represented by coun­sel) to proceed 
pro
 
se
 because the court will not appoint counsel to represent him and defendant has failed, willfully or not, to hire counsel of his own choice.  
Under these circum­stanc­es, no legiti­mate waiver of Rule 401 can occur because the rule requires a defendant's knowing, intel­

ligent, and 
volun­tary
 waiver of his right to be represented by counsel.  When a defen­dant insists on being represented by counsel but claims to be unable to afford an attorney of his own choice, Rule 401 simply does not apply.

Rule 401 lacks the explic­it provi­sion con­cerning voluntariness found in Rule 402, which addresses guilty pleas.  See 177 Ill. 2d R. 402(b).  None­the­less, because Rule 401 deals with a funda­mental constitu­tional right, it implicitly requires that any waiver of that right must be voluntary.    

In addressing waivers by defendants of their right to counsel, many courts have recognized that voluntariness is re­quired­.  In 
People v. Kidd
, 178 Ill. 2d 92, 104, 687 N.E.2d 945, 952 (1997), the court wrote that "[w]hen a defendant seeks to waive counsel, the trial court must not only determine that he is competent to stand trial but also sat­isfy itself that his waiver of this constitu­tional right is both knowing and volun­tary," citing 
Godinez v. Moran
, 509 U.S. 389, 400, 125 L. Ed. 2d 321, 333, 113 S. Ct. 2680, 2687 (1993) ("trial court must satisfy itself that the waiver of [a defendant's constitutional right to counsel] is knowing and voluntary").  See also 
Haynes
, 174 Ill. 2d at 235, 673 N.E.2d at 332 (waiver of constitu­tional right to counsel must be "voluntary, knowing, and intelli­gent"); 
United States v. Patterson
, 140 F.3d 767, 774 (8th Cir. 1998) (defen

dant's waiver of counsel must be "knowing and volun­tary").  

Because Rule 401 implicitly requires that a waiver of a defendant's right to counsel be voluntary, I must disagree with a decision of this court that suggests a valid Rule 401 waiver could be obtained involuntarily from a defendant.  In 
Childs
, 278 Ill. App. 3d 65, 662 N.E.2d 161, this court addressed a situation in which the defendant at the trial level was "playing games" with court procedures, insisting that he be represented by counsel, while also insisting that the two differ­ent assis­tant public defenders who had been appointed to repre­sent him were incompe­tent and he needed other counsel.  This court stated its disap­proval of such game playing and wrote the following:

"The trial court could have made an initial determination whether there was any valid basis to discharge counsel.  Since none was shown, the court could have denied the motion to withdraw and proceeded with trial.  
On
 
the
 
other
 
hand
, 
had
 
the
 
court
 
given
 
the
 
admoni

tions
 
required
 
by
 
Rule
 
401(a)
, 
valid
 
waiver
 
of
 
counsel
 
could
 
have
 
been
 
found
, 
despite
 
defendant's
 
insistence
 
that
 
he
 
did
 
not
 
wish
 
to
 
represent
 
himself
."  (Emphasis added.)  
Childs
, 278 Ill. App. 3d at 74, 662 N.E.2d at 166-67.  

I disagree with the emphasized sentence in that quota­tion from 
Childs
.  
   

Trial courts must never reward a defendant's ob­struc­

tionist behav­ior.  Yet, that is what hap­pened in 
Childs
.  The defen­dant in 
Childs
 filed a com­plaint with the Illi­nois Attor­ney Regis­tration and Disci­plinary Commission against the assis­tant public defender who was then representing him.  The trial court therefore permitted that defense attorney to with­draw on the day of trial, but first gave defendant the choice of going to trial without an attor­ney, going to trial with that assistant public defender as his attorney, or hiring his own counsel within the next hour.  
Childs
, 278 Ill. App. 3d at 69, 662 N.E.2d at 163.  When the defendant--predict­ably--refused to exercise any of those options, the court made a fundamental mistake by discharging the assistant public defender and forcing defendant to repre­sent himself.  This court appropri­ately reversed and remand­ed for a new trial, but in doing so inappropri­ately indicated that trial courts have author­ity to force the waiver of counsel upon a defen­dant who insists that he does not want to represent himself.

Despite the diffi­culties court-ap­pointed counsel may encoun­ter represent­ing an obstructionist defendant who is hell-

bent on interfering with an orderly and constructive attor­ney-

client rela­tion­ship, trial courts should almost never permit such counsel to withdraw from representing that defendant.  A trial court's doing so only rewards this bad behav­ior.  As the trial court in 
Childs
 learned, courts delude themselves by thinking an obstruc­tionist defendant is somehow going to behave better when a new court-appointed counsel enters the picture.  

Trial courts should not hesitate to reject motions to withdraw filed by court-appointed counsel when those motions are based on the grounds that the relationship between the defen­dant and counsel has become "poi­sonous" or unpleasant due to defen

dant's bad behav­ior.  Instead of granting such motions, the court should make clear to the defen­dant that failing to cooperate with his counsel will only hurt the defendant and that the court will not change coun­sel.  Perhaps a graphic way of getting this point across is to explain that if defendant is convicted and sentenced to prison, when the bus to Stateville comes to pick him up, only he will get on, not his lawyer.

Illinois law provides trial courts with the means of trying to persuade nonindigent defendants to hire lawyers of their own choice.  Indeed, a funda­mental purpose underlying section 113-3.1 of the Code, permitting trial courts to order defendants to reimburse the State or the county a reasonable sum for the servic­es of appointed counsel, was to address situations such as that in the present case.  725 ILCS 5/113-3.1 (West 1996).  Trial courts can say to such a defen­dant that if he fails to hire an attorney of his own choice, then the court will appoint counsel and require defen­dant to pay for the servic­es of that counsel to the extent the court finds he is capable of doing so, with a possible maximum payment of $5,000.  

Utilizing this statute, a trial court should explain to a defen­dant (who has not waived his right to counsel pursuant to Rule 401) that the issue before the defendant is whether he will be repre­sented by an attorney of his own choice or one of the court's, but either way he will wind up paying a consid­erable sum of money.  The court should further suggest that, in view of these two choices, perhaps the defendant might want to recon­sid­er his deci­sion not to hire an attor­ney of his own choice. 

In 
People v. Wil­liams
, 92 Ill. 2d 109, 118, 440 N.E.2d 843, 847 (1982), the Supreme Court of Illinois wrote:

"[W]here a defendant who is financially able to engage counsel has been instructed to do so within a certain and reasonable time, but he fails to do so and does not show reason

able cause why he was unable to secure representa­tion, the court may treat such a failure as a waiver of the right to counsel and require him to proceed with the hearing." 

However, I have serious doubts as to whether the Supreme Court of Illinois would continue to adhere to its decision in 
Williams
 and, even if it did so, whether that decision continues to provide much guidance to trial courts.  

First, 
Williams
 cited no decision from the United States Supreme Court as underly­ing its holding, and the decisions the Supreme Court has rendered since 1982, such as 
Godinez
, 509 U.S. 389, 125 L. Ed. 2d 321, 113 S. Ct. 2680, suggest that the Supreme Court has taken a harder line on finding waiver of a defendant's right to counsel than that shown in 
Williams
. 

Next, section 113-3.1 of the Code was enacted effective July 1, 1982, some weeks before the supreme court decided 
Wil­

liams
, thus provid­ing trial courts with a means of persuading nonindigent defen­dants to hire counsel that was not available when the trial in 
Williams
 occurred.  The Supreme Court of Illi­

nois might well conclude, as discussed in this special concur­

rence, that trial courts should fully utilize this new statute before they will be permit­ted to whittle away at a funda­men­tal constitu­tional right.  

Last, even if the Supreme Court of Illinois were willing to contin­ue to follow 
Williams
, it might do so only under the most compel­ling factual circumstances, leaving trial courts to guess whether a particular situation before them is compelling enough.

For instance, in 
King v. People
, 728 P.2d 1264 (Colo. 1986), the Colorado Supreme Court addressed a case in which a defendant charged with a felony failed not only to hire private counsel, but also to report to a court agency that would inves­

tigate his finan­cial status and determine his eligi­bility for court-appointed counsel, as the trial court had directed.  Over a two-month period, the trial court repeatedly warned the defendant of his right to counsel and of the necessity of con­tacting the eligibil­ity investigator, but the defendant none­theless appeared on the date of trial without having either hired an attorney or seen the eligi­bility investi­gator.  Despite the defendant's statement that he needed an attorney to defend himself, the court directed that the trial would proceed, and defendant was ulti

mately convicted.  
King
, 728 P.2d at 1267.  The Colorado Supreme Court reversed, holding as follows:

"In order for a court to conclude that an accused has impliedly waived counsel, the record as a whole, including the reasons proffered by the defendant for not having counsel, must show that the defendant know­

ingly and willingly undertook a course of conduct that evinces an unequivocal intent to relinquish or abandon his right to legal representation."  
King
, 728 P.2d at 1269.

This standard, which is probably the minimum required by the sixth amendment to the United States Constitution (U.S. Const., amend. VI), is nonetheless so high that for all practical pur

poses trial courts ought to consider it essentially unreachable.  Furthermore, if trial courts properly utilize section 113-3.1 of the Code, as de­scribed herein, they will not need to determine whether the behavior of the defendant in the case before them is egregious enough to "evince[] an unequivocal intent" (
King
, 728 P.2d at 1269) to relin­quish or abandon his right to legal representa­tion.  As a last matter, trial courts should be mindful that if a reviewing court finds a trial court erred by denying a defendant his request to be represented by counsel, that error almost certainly will be deemed reversible.  

Experience suggests that trial courts who utilize section 113-3.1 of the Code as described herein will ulti­mate­ly not have many defen­dants choosing court-ap­point­ed counsel when those defendants in fact have the means to hire their own attor­

neys.  In handling those few defendants who are suffi­ciently stubborn to persist in their dubious claims of not being able to afford to hire private counsel, trial courts should resist distorting the important, fundamental right to counsel, guaran­

teed by the sixth amendment to the United States Constitu­tion and article I, section 8, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §8), by engaging in some sort of contest with these defendants to see who blinks first.  Instead, courts confronted with such a defen­dant should appoint counsel and utilize section 113-3.1 of the Code to its full­est, requiring such a defen­dant to pay $5,000 in an appropri­ate case.