2021 IL App (4th) 180267

FILED
April 13, 2021
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JEFFREY LYNN MARTIN, | ) | No. 16CF231 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott D. Drazewski, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Justices Holder White and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1        In March 2016, the State charged defendant, Jeffrey Lynn Martin, with one count of aggravated battery, a Class 3 felony (720 ILCS 5/12-3.05(c), (h) (West 2014)). At defendant's arraignment, the public defender was appointed to represent him. In August 2016, defendant indicated he wanted to proceed *pro se*. The trial court admonished defendant about the nature of the offense, the maximum and minimum penalties, his right to an attorney, and the potential pitfalls in proceeding *pro se* before finding defendant's waiver of counsel to be knowing and intelligent. In November 2017, defendant requested the public defender be reappointed to represent him at trial. The court granted defendant's request, but at the next hearing, defendant again requested to represent himself, which was denied by the trial court. At the final pretrial hearing in December 2017, defendant again requested to represent himself *pro se*, which was granted. The trial court said it would consider defendant's request if he was prepared to proceed to the previously

scheduled jury trial on Monday. Defendant then confirmed he would be ready, and the court confirmed with counsel the witnesses defendant wanted to call at trial were under subpoena, and the trial court admonished defendant again about the nature of the charges and the possible penalties. Upon hearing one of his witnesses was not available to testify at trial, defendant asked for a continuance. The trial court stated that if the parties could not agree on a stipulation for the witness's testimony, defense counsel would be "back on the hook" and "will be representing [defendant] on Monday." After a stipulation could not be reached, defendant indicated he was ready to go to trial on Monday *pro se* and confirmed he was ready to proceed even though his witness would be unavailable to testify. On the day of trial, defendant again asked for a continuance to subpoena the unavailable witness for a later trial date. The court denied defendant's request, reminding him that the previous week he was put on notice about the witness unavailability and he still maintained he was ready for trial. Trial commenced that day, and defendant was convicted of aggravated battery and sentenced to seven years in the Illinois Department of Corrections (DOC).

¶ 2        On appeal, defendant argues (1) the trial court abused its discretion by denying defendant's continuance to subpoena a material witness, (2) the trial court failed to properly admonish defendant about his right to represent himself in posttrial proceedings, and (3) the trial court's seven-year sentence was excessive. The State argues defendant waived any claim of error regarding the denial of his continuance by agreeing to go to trial *pro se* without the witness's testimony and forfeited it by failing to file a posttrial motion. Additionally, the State says the trial court did not abuse its discretion because the court found defendant was attempting to thwart the administration of justice, and the unavailable witness was not material because the entire incident was captured on the store's security video. Further, the State argues defendant's waiver of counsel

was knowingly and intelligently made, and his sentence was not excessive due to defendant's criminal history, the nature and circumstances of the offense, and the fact he was on bond in another criminal case when he committed this offense. Because we find the trial court failed to substantially comply with Illinois Supreme Court Rule 401 (eff. July 1, 1984) during posttrial proceedings, we remand for a new sentencing hearing.

¶ 3                                    I. BACKGROUND

¶ 4        In March 2016, the State charged defendant with one count of aggravated battery, a Class 3 felony, for attacking a Walmart employee inside the store (720 ILCS 5/12-3.05(c), (h) (West 2014)). The public defender's office was appointed to represent him at arraignment.

¶ 5        At a status hearing in August 2016, defense counsel asked for a 60-day status date to go over discovery with defendant. Defendant objected and requested "another public defender that's more capable." The trial court, noting the assignment of the attorneys was left to the public defender's office, refused. Defendant then indicated he wanted to represent himself because his current attorney was "conspiring with the State after seven months of all the continuances and talking to them." The court set the matter for hearing later in the month to allow defendant additional time to consider whether he wanted to remain with the public defender's office or represent himself. At the later hearing, when the trial court began admonishing defendant about waiving counsel pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), defendant asked if he could "waive that," which the court declined to do. Defendant was then fully informed of the charges, the possible penalties, and the disadvantages of proceeding *pro se*. After further inquiry into defendant's education, experience with the legal system, and background, the court found defendant knowingly and intelligently waived his right to counsel.

¶ 6        At the October 2016 status hearing, defendant claimed he did not receive discovery. During the hearing, due to what the trial court described as defendant's "rambling thoughts" and "flights of fancy," the trial court expressed concern for defendant's fitness to stand trial. After further discussion, the court found there was a *bona fide* doubt regarding defendant's fitness and ordered a fitness evaluation. At the fitness hearing in December 2016, due to what was most likely a typographical error, the fitness report appeared to contain conflicting information about defendant's fitness to stand trial. In an abundance of caution, the court reappointed the public defender's office to represent defendant for a further fitness hearing the following week. By the time of the next hearing, the forensic psychiatrist's updated report indicated defendant was fit to stand trial and represent himself, noting his above-average intelligence, motivation for self-representation, and understanding of the legal issues. Pursuant to the stipulated admission of the updated report, the court allowed defendant to proceed *pro se*.

¶ 7        After several continuances by defendant for hearings on various *pro se* motions, the case was eventually set for a final pretrial conference on July 13, 2017, with a jury trial set for the following Monday. During the final pretrial conference, after several outbursts and arguments the court found unintelligible, defendant said he wanted to subpoena a witness (Stephens) who was present in the store during the incident resulting in his arrest. He described her as a "critical witness" and "essential to the defense," and he had a subpoena "ready to issue." The State objected, arguing defendant had over a month to subpoena Stephens and she was not a material witness because the entire incident was captured on video. Defendant contended Stephens "is a firsthand witness that I did not *** touch [the victim] or threaten him in any way while she was a foot away from the defendant, and that she clearly saw the defendant being assaulted." The court allowed a subpoena to issue, and because the State had previous contact with this witness, the State was

ordered to contact her and notify her she was needed for trial the following Monday. By the end of the hearing, noting after approximately 2½ hours they had been able to address only about a third of one of defendant's multiple *pro se* motions, the trial court expressed concern for defendant's dilatory tactics and his "inability to concentrate and to focus in on the issues in this case" and once again appointed the public defender's office. The court reset the matter for status the following week. The public defender's office subsequently filed a motion to reconsider their appointment, and at the next hearing, the court again allowed defendant to proceed *pro se*. The court appointed the public defender's office to act as standby counsel, granted defendant's motion to continue over the State's objection, and set the final pretrial and trial in early November 2017.

¶ 8       The trial court had previously confirmed Stephens was served with a subpoena directing her to appear for trial in November 2017, and at the final pretrial in November, the State also confirmed Stephens had been subpoenaed and advised when to appear for trial. At the end of this conference, defendant once again informed the court he wanted the public defender's office to be reappointed to represent him. The court informed defendant that if the public defender was reappointed this would be the final time and defendant would forfeit his right to proceed *pro se*. Defendant said he understood, the public defender was appointed, and the matter was set for a final pretrial conference the following week.

¶ 9       At the conference in December 2017, defense counsel requested a continuance and defendant said he would like to "refuse counsel" due to "conflicts of interest." The trial court denied defendant's request, reminding him of the previous hearing where defendant was warned about the possibility of forfeiting his right to proceed *pro se*. The court did, however, continue the case for another final pretrial conference later that month. At that hearing, defendant again requested to proceed *pro se*. The court said it would consider defendant's request to proceed *pro se*

if defendant was "answering ready for trial on Monday." Regarding Stephens, in response to an inquiry by the trial court, defense counsel advised that, as a matter of trial strategy, he was electing not to call her as a witness. (It should be noted, although defendant maintained she was necessary, Stephens was also a complaining witness against him in another case he had pending at the time.) Defendant confirmed several more times he was ready to go to trial the following week *pro se* based on the witnesses known to be available at that time and the information in his possession. The trial court reminded him he was only allowing defendant to proceed *pro se* because he was answering ready for trial on Monday.

¶ 10          During the proceeding, it was learned Stephens had informed the state's attorney's victim advocate of her unavailability for the next two weeks due to surgery. Upon hearing this defendant said, "No way. Continuance." The trial court told the public defender he would be "back on the hook, literally, in trying this case" if the parties could not reach a stipulation regarding Stephens's testimony. Not surprisingly, no such agreement could be reached.

¶ 11          Upon hearing there was no stipulation, the trial court inquired into defense counsel's strategy for declining to call Stephens as a witness. Counsel explained she was the complaining witness in one of defendant's other cases, he had concerns about her bias, and any relevant testimony she could render was available simply by viewing the security video. As a result, the trial court found Stephens was neither a relevant nor material witness. Recalling defendant's assertion he would not be prepared to proceed on the following Monday, the following colloquy took place:

> "DEFENDANT: I'm prepared
>
> THE COURT:—without Ms. Stephens'[s] testimony—
>
> DEFENDANT: It's fine. Let's roll.

THE COURT: Okay.

DEFENDANT: As long as I'm *pro se*, let's go.

THE COURT: Yes.

DEFENDANT: I'll do whatever I got.

THE COURT: That's—okay.

DEFENDANT: As long as it's all on record. In English.

THE COURT: I just wanted to make sure. All right. So you're not moving to continue. You understand that Ms. Stephens is not going to be here.

THE DEFENDANT: Hey, I've—I've stated my intent, your Honor.

THE COURT: But I'm making sure that you understand—

DEFENDANT: Yes, your Honor.

THE COURT:—that she's not here, and that there is no basis, then, to move to continue, then, with the trial based upon her unavailability as a witness.

DEFENDANT: Your honor."

¶ 12          When trial was about to begin the following Monday, defendant again raised his motion for a continuance based on Stephens's unavailability, claiming she was a material witness. Defendant contended he would be prejudiced by her absence, her presence was necessary to his defense, and he was being "rushed to jury trial." Although defendant contended her testimony would cover more than he had previously represented to the trial court, he did not elaborate further. The court reminded defendant this had already been discussed and he opted to proceed *pro se* knowing Stephens was unavailable. Defendant's response was to claim the trial court was violating unspecified constitutional rights. The court denied defendant's motion to continue, reading from the previous week's docket sheet, which reflected defendant's desire to proceed *pro se* with the

witnesses and evidence known to be available at the time. The trial court found any further delay would be defendant's "attempt to thwart the administration of justice" and proceeded to trial that day.

¶ 13    After the State's evidence, defendant called no witnesses and elected not to testify. During closing arguments, defendant engaged in a nearly unintelligible effort to explain the evidence and, eschewing all offers of assistance, sought, apparently unsuccessfully, to operate the video player to show something he contended was visible and that he argued would clearly show he acted in self-defense. Defendant repeatedly sought to argue facts that were either not in evidence, inadmissible, or not proper for consideration by the jury, resulting in multiple objections by the State and admonishments by the trial court. After deliberating for 40 minutes, the jury found defendant guilty of aggravated battery. The trial court then brought up the issue of defendant's continued *pro se* representation:

> "Since we're moving from one phase of the process to another, \*\*\*
>
> although you're entitled to remain *pro se* on this case, if you desire,
>
> you're also entitled to, should you wish, to have the Court reappoint
>
> the public defender's office to represent you for purposes of the
>
> sentencing hearing. Do you know what you would like to do?"

¶ 14    Defendant told the trial court he was "going to remain *pro se*." He also informed the court he had motions on file seeking to have the court reconsider its appointment of the public defender in his two other pending cases since he wished to proceed *pro se* in those as well. At the next hearing scheduled for sentencing, defendant requested "counsel or shadow counsel for sentencing" because he decided preparing for sentencing was more difficult than he thought. Reminding defendant of his previous elections to represent himself, the trial court informed

defendant standby counsel was not an option and that he could either choose to represent himself or proceed with counsel. Defendant maintained his desire for counsel, and the trial court once again reappointed the public defender's office and set the sentencing hearing for March 2018.

¶ 15   Before beginning the sentencing hearing in March 2018, defendant again informed the trial court he was refusing the assistance of counsel. When asked if he wanted to proceed *pro se*, defendant confirmed that he did, telling the court, "let the record reflect I am insisting on proceeding *pro se*." Although he wanted to do so for all three of his pending cases, the court required him to focus on only the one for which he was presently facing sentencing. Defendant then said he was not prepared to proceed on that date, however, because he contended he did not have access to his "legal material" at the prison to which he had been transferred and that he wished to "proceed with post-trial motions." A review of the docket reveals no such motions were filed by defendant at any time within 30 days of the jury verdict or any time thereafter. The court reminded defendant he had been admonished to file any posttrial motions within 30 days of the guilty verdict in December. Once defendant reiterated his request to continue *pro se*, the trial court relieved the public defender, contingent on defendant's willingness to proceed to sentencing at that time. The trial court denied defendant's oral motion to continue and proceeded to sentencing. The State presented no evidence in aggravation.

¶ 16   Defendant testified for over 90 minutes, spending most of that time attacking the veracity of the presentence investigation report and previous trial court rulings.

¶ 17   The trial court sentenced defendant to seven years in DOC and denied defendant's motion to reconsider the sentence.

¶ 18   This appeal followed.

¶ 19                     II. ANALYSIS

¶ 20　　　　　Defendant's claims of error are threefold: (1) the trial court abused its discretion in denying defendant a continuance of trial in order to subpoena Stephens, and in doing so, it denied defendant his constitutional right to present a defense; (2) the trial court failed to properly admonish defendant pursuant to Illinois Supreme Court Rule 401 (eff. July 1, 1984) before allowing him to proceed *pro se* at sentencing; and (3) the trial court's seven-year extended-term sentence was disproportionate to the seriousness of the offense, and in imposing the sentence, the trial court placed undue emphasis on defendant's criminal history.

¶ 21　　　　　　　　　　　　　　A. Waiver

¶ 22　　　　　The State asserts defendant waived any claim of error or prejudice in the trial court's denial of his motion to continue the trial when he consented to proceed to trial knowing his witness was unavailable. We agree.

¶ 23　　　　　Defendant cannot pursue one course of action before the trial court and then claim error for having done so once he appeals. "It is well settled that a party cannot acquiesce to the manner in which the trial court proceeds and later claim on appeal that the trial court's actions constituted error." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 60, 129 N.E.3d 755; see also *People v. Hughes*, 2015 IL 117242, ¶ 33, 69 N.E.3d 791 ("a party cannot complain of error that it brought about or participated in"). "Active participation in the direction of proceedings *** goes beyond mere waiver." *People v. Villarreal*, 198 Ill. 2d 209, 227, 761 N.E.2d 1175, 1184 (2001).

¶ 24　　　　　After a stipulation between the parties could not be reached, and after the trial court mentioned defendant's earlier comment he would not be ready to proceed with trial on Monday, defendant interjected, "I'm prepared." The court reminded defendant this meant the trial would proceed without Stephens's testimony, and defendant stated, "It's fine. Let's roll. ***As long as I'm *pro se*, let's go." Considering defendant's history of repeatedly vacillating between his desire

for counsel and demands to proceed *pro se* and the resultant delay in the proceedings, the trial court had good reason to ensure defendant understood his demand to commence trial on the following Monday, *pro se*, would be without Stephens as a witness. The court confirmed this with defendant, stating, "So you're not moving to continue. You understand that Ms. Stephens is not going to be here." Defendant responded, "I've stated my intent, your Honor."

¶ 25 During this exchange, the trial court reminded defendant three times that if he answered ready for trial it would be without Stephens's testimony and defendant would have no basis to continue the trial based on the unavailability of her testimony. All three times defendant confirmed he was ready for trial on Monday. Defendant argues the trial court abused its discretion by conditioning defendant's right to represent himself on a requirement that he proceed to trial without calling Stephens. The record reveals otherwise. The trial court did not force defendant to trial—defendant's overarching desire, clearly expressed during the pretrial, was that he be permitted to proceed on his own behalf and without the assistance of the public defender.

¶ 26 Here, defendant's acquiescence waived any claim of error in the trial court's later denial of his motion to continue on the day of trial. *Hibbler*, 2019 IL App (4th) 160897, ¶ 60. Further, his direct participation in the decision to proceed without Stephens, so long as he was allowed to represent himself, results in estoppel from any claim of error, and we decline to consider this issue on appeal. *People v. Harvey*, 211 Ill. 2d 368, 385, 813 N.E.2d 181, 192 (2004).

¶ 27 B. Illinois Supreme Court Rule 401

¶ 28 Despite raising the issue now, defendant filed no posttrial motion claiming the trial court failed to readmonish him about proceeding *pro se* at sentencing. Having failed to do so, we would normally find he forfeited appellate review. *People v. Piatkowski*, 225 Ill. 2d 551, 564, 870 N.E.2d 403, 409 (2007). However, Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) provides

- 11 -

that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Because we acknowledge "the right to counsel is fundamental" and reviewable as a "substantial right" (see *People v. Stoops*, 313 Ill. App. 3d 269, 273, 728 N.E.2d 1241, 1244 (2000); *People v. Langley*, 226 Ill. App. 3d 742, 749, 589 N.E.2d 824, 829 (1992)), we are compelled to address it under "plain error" regardless of defendant's failure to raise it previously.

¶ 29 This fundamental right extends to posttrial proceedings. During the sentencing stage of a proceeding, "defendant's substantial rights are affected and the defendant has a constitutional right to counsel at that stage." *Langley*, 226 Ill. App. 3d at 749. "The right to counsel is so fundamental it should not be 'lightly deemed waived.' " *Langley*, 226 Ill. App. 3d at 749 (quoting *People v. Robertson*, 181 Ill. App. 3d 760, 763, 537 N.E.2d 1036, 1039 (1989)).

¶ 30 Defendant claims the trial court erred by failing to substantially comply with Illinois Supreme Court Rule 401 (eff. July 1, 1984) during posttrial proceedings. We agree.

¶ 31 Whether a trial court failed to substantially comply with Rule 401(a) admonishments is a question of law we review *de novo*. *People v. Pike*, 2016 IL App (1st) 122626, ¶ 114, 53 N.E.3d 147.

¶ 32 Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) states:

> "[a]ny waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
> (1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law,
including, when applicable, the penalty to which the defendant may
be subjected because of prior convictions or consecutive sentences;
and

(3) that he has a right to counsel and, if he is indigent, to have
counsel appointed for him by the court."

¶ 33    "The purpose of the rule is to ensure that a waiver of counsel is knowingly and intelligently made." (Internal quotation marks omitted.) *People v. Reese*, 2017 IL 120011, ¶ 62, 102 N.E.3d 126. Under the "continuing waiver rule," although defendants enjoy the right to counsel during all critical stages of a criminal proceeding, including posttrial and sentencing proceedings, a defendant can waive the right to counsel and that waiver stays in place throughout the remaining stages. *People v. Baker*, 92 Ill. 2d 85, 91-92, 440 N.E.2d 856, 859 (1982). However, there are two exceptions to the continuing waiver rule, necessitating another Rule 401 admonishment. They are "(1) [when] the defendant later requests counsel or (2) other circumstances suggest that the waiver is limited to a particular stage of the proceedings." *People v. Palmer*, 382 Ill. App. 3d 1151, 1162, 889 N.E.2d 244, 253 (2008) (citing *Baker*, 92 Ill. 2d at 91-92).

¶ 34    Although defendant switched between having counsel and going *pro se* no less than eight times, thereby requiring no less than eight Rule 401 admonishments, he focuses his appeal on one instance, what defendant refers to as his "second" waiver of counsel at sentencing. After the jury verdict, defendant first indicated he wanted to "remain *pro se*." On the day of the sentencing hearing, he then requested the public defender's office be appointed to represent him at sentencing, which the trial court granted. At the next sentencing hearing in March 2018, he

requested, and was ultimately allowed, to proceed *pro se*. Defendant contends: "[b]efore accepting [defendant's] second waiver of his right to counsel [during posttrial proceedings] the court was required to readmonish him about his right to self-representation to substantially comply with Illinois Supreme Court Rule 401(a)." In reality, this was the first waiver of counsel posttrial since he merely continued his self-represented status initially when asked by the court after the jury's verdict was returned. Defendant relies, however, on the first exception to the "continuing waiver rule," *i.e.*, when defendant later requests counsel, as the basis for his claim.

¶ 35    In the matter before us, after defendant was convicted, the trial court admonished him about his right to have an appointed attorney "for purposes of the sentencing hearing." This was the only occasion when the trial court admonished defendant to any extent under Rule 401(a) during posttrial proceedings. After defendant elected to continue in his self-represented status, the trial court said nothing about the nature of the charge or the possible penalties. When defendant later accepted the public defender and then sought to proceed *pro se* once again, there was no discussion about the nature of the charge, possible penalties, or right to counsel under Rule 401(a). Consequently, there was *never* an admonishment about the nature of the charge nor the minimum and maximum possible penalties of the offense at a separate, critical stage of the proceedings. See *People v. Burton*, 184 Ill. 2d 1, 22, 703 N.E.2d 49, 59 (1998) (right to counsel attaches at all critical stages of criminal prosecution and will not be taken away unless affirmatively waived by defendant). "The trial court's admonishments upon defendant's second waiver of counsel fell so far from Rule 401(a)'s terms, they cannot be considered substantial compliance with the rule." *People v. Cleveland*, 393 Ill. App. 3d 700, 711, 913 N.E.2d 646, 656 (2009), *overruled on other grounds by People v. Jackson*, 2011 IL 110615, 955 N.E.2d 1164.

¶ 36    We are not unsympathetic to the plight of the trial court. The record reflects defendant was abrasive, disruptive, and insolent at almost every proceeding, and yet the court made an admirable effort to accommodate him. Defendant continuously interrupted the trial court to broach irrelevant topics and eventually had to be removed from the courtroom briefly during several proceedings due to his disruptive behavior. Several pretrial and status proceedings, normally reserved for 10 to 15 minutes at most, routinely took up hours of the trial court's time due to defendant's constant irrelevant ramblings. The record also reflects defendant was previously fully informed on his right to be represented by counsel during the pretrial stage (ironically, defendant requested to "waive" Rule 401 admonishments during his first *pro se* request), and he vacillated numerous times between being represented by counsel to representing himself during pretrial proceedings (approximately eight times). Indeed, in August 2016, during his first request to proceed *pro se*, defendant confirmed he previously represented himself in a felony case, was familiar with conducting legal research, had been through three previous trials, and had previously assisted in closing arguments and preparing jury instructions. Thus, it is doubtful the repetition of Rule 401 admonishments defendant initially sought to "waive" would have had a significant impact on defendant's decision for self-representation, but that is not the proper analysis. See *People v. Fort*, 2017 IL 118966, ¶ 18, 88 N.E.3d 718 (prejudice is presumed because of the importance of the right involved). Rule 401(a) admonishments must be provided " 'where a defendant waives counsel, proceeds *pro se*, requests counsel for a distinct stage of the proceedings, receives counsel, and then decides to waive counsel *again*.' " (Emphasis in original.) *People v. Washington*, 2016 IL App (1st) 131198, ¶ 60, 64 N.E.3d 28 (quoting *Cleveland*, 393 Ill. App. 3d at 712).

¶ 37    We have no doubt, after considering the entirety of the record, defendant knowingly and voluntarily waived his right to counsel. The record reveals his insistence on self-representation to the extent that, at one point, he was "beseeching" the court to allow him to do so. Defendant vacillated between representation by counsel or self-representation throughout the proceedings, each time intending to thwart the trial or sentencing. However, we are required to mechanically apply Rule 401 here.

¶ 38    Rule 401 was designed to be a shield to protect defendant's rights; it should not be used on appeal as a sword to abuse the intent of the rule. The only issue raised at defendant's hearing for a motion to reconsider the sentence was defendant's claim seven years was excessive for an "overenhanced misdemeanor." Throughout the nearly 2000-page record, we could not find one instance where defendant raised substantial compliance with Rule 401 as an issue during the pretrial, trial, or posttrial proceedings. We surmise it was not raised before the trial court because it was never an issue—until now. Since defendant requested and received representation for sentencing, and then later requested and was granted the right to represent himself, it was incumbent upon the trial court to substantially comply with Rule 401. Because it failed to do so, we are unable to conclude defendant provided a knowing and voluntary waiver of counsel. This omission requires remand for a new sentencing hearing. We decline to address the other issues raised by defendant in light of our remand.

¶ 39                    III. CONCLUSION

¶ 40    For the reasons stated, we reverse the trial court's judgment and remand the cause for resentencing consistent with this order.

¶ 41    Reversed and remanded.

**No. 4-18-0267**

| | |
|---|---|
| **Cite as:** | *People v. Martin*, 2021 IL App (4th) 180267 |
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 16-CF-231; the Hon. Scott D. Drazewski, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Michael Gomez, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Don Knapp, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and James Ryan Williams, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |